**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lee Howard MONTGOMERY,
Defendant–Appellant.**

**Howard Lee MONTGOMERY, aka
Lee Howard Montgomery,
Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

Nos. 89–50592, 91–55512.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 18, 1992.

Decided July 13, 1993.

---

Martha M. Hall, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant, plaintiff-appellant.

Randy K. Jones, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee, defendant-appellee.

Before: TANG and HALL, Circuit Judges, and WALKER, District Judge *

WALKER, District Judge:

Howard Lee Montgomery appeals his conviction of conspiracy to distribute and distribution of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Montgomery also appeals the denial of his motion for relief under 28 U.S.C. § 2255. His main contention in both appeals is that the government did not use "reasonable efforts" to produce a confidential informant for a pretrial interview, thereby violating his right to due process of law. Montgomery's habeas appeal has been consolidated with the direct appeal from his convictions.

In addition to his allegation that the government failed to use "reasonable efforts" to produce the confidential informant, Montgomery also asserts two other grounds for reversing his convictions: (1) the government's failure to produce the confidential informant violated the strictures of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and (2) the district court abused its discretion when it refused to limit the government's cross-examination of Montgomery to questions not concerned with the identification of sources, and then ordered Montgomery's testimony stricken from the record when he refused to answer such questions. Because we find that the government's failure to use reasonable efforts to produce the confidential informant provides sufficient grounds for reversal of Montgomery's convictions, we need not reach the *Brady* issue. We review the issue of striking

Montgomery's testimony to provide guidance on remand.

## I.

Montgomery was indicted on January 18, 1989, in the United States District Court for the Southern District of California on two counts of distributing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and one count of conspiring to distribute methamphetamine, in violation of 21 U.S.C. § 846. The assistance of a confidential informant named James Hardcastle helped bring about Montgomery's indictment.

Hardcastle, along with his girlfriend Joan McKenzie, had been arrested on methamphetamine charges in Tennessee in September 1988. Under the federal sentencing guidelines, Hardcastle faced formidable penalties if found guilty of the charges. In lieu of prosecuting Hardcastle on these charges in Tennessee, the government offered Hardcastle the opportunity to serve as a confidential informant to assist federal agents in investigating and arresting drug offenders in the San Diego area, where Hardcastle had most of his contacts, and to enter a guilty plea to a lesser offense in the Southern District of California.

Shortly after Hardcastle began work as a confidential informant for the Drug Enforcement Agency in San Diego, he suggested Montgomery as a target. Hardcastle arranged for a meeting to take place on November 22, 1988, between himself, Montgomery, and DEA Supervisor Jim Bohn. At this meeting, Montgomery sold Bohn approximately twenty-eight grams of methamphetamine. Bohn also negotiated for the purchase of larger quantities of methamphetamine to take place sometime in the "near future." According to Hardcastle, the government, specifically Agent Bohn, promised him probation if he was successful in producing an arrest. Hardcastle also testified that Agent Bohn pressured him to arrange a large drug transaction, a deal for at least two pounds of methamphetamine, and told him "to lie or do whatever it took to get a deal."

---

* Honorable Vaughn R. Walker, United States District Judge for the Northern District of Califor-

nia, sitting by designation.

Hardcastle also made several statements to Agent Bohn regarding Montgomery's narcotics activities that Montgomery alleges were false.

On January 5, 1989, Montgomery informed Hardcastle that a larger shipment of methamphetamine had arrived. Hardcastle then arranged for Montgomery to meet Bohn in a parking lot in Ramona, California. Hardcastle and Bohn waited in the parking lot for Montgomery to arrive. Montgomery initially arrived without any drugs, but left after Hardcastle and Bohn told him to go home and wait for the drugs due to arrive soon. After several phone calls from Hardcastle, he eventually returned, followed by two men in a white truck. Upon arrival, Montgomery drove over to Bohn's car, then got out of his truck and showed Bohn a package of methamphetamine. At this point, Bohn gave the signal to other agents in the parking lot to arrest Montgomery and the other two passengers sitting in the white truck.

Before trial, Montgomery filed various motions including a motion to dismiss the indictment due to outrageous governmental misconduct and a motion to compel the government to produce Hardcastle for an interview. At a hearing on March 17, 1989, the court ordered the government to make Hardcastle available for an interview no later than ten working days before the trial. The court continued the remaining motions.

At a second motions hearing on April 10, 1989, the court set the trial for May 2, 1989, and reminded the Assistant United States Attorney that the government was still under order to produce the confidential informant. Ten working days before the May 2 trial date indicates a deadline to produce Hardcastle no later than April 18.

On April 27, 1989, Montgomery requested a chambers conference because the government had not yet produced the confidential informant for an interview. At this conference, the government informed the court for the first time that Hardcastle had become a fugitive on April 17, 1989, when he failed to appear to enter a Rule 20 guilty plea, and that the government's last contact with Hardcastle had been on April 14, 1989, when Hardcastle spoke with DEA Agent Courtney on the phone. The court then issued a bench warrant for Hardcastle's arrest.

Montgomery contended that as a result of the loss of the confidential informant whom Montgomery had intended to call as a witness, the indictment should be dismissed. The court vacated the trial date and set a hearing for May 22, 1989.

At the hearing, the court heard and denied Montgomery's motion to dismiss the indictment due to the failure of the government to produce the confidential informant. The trial was rescheduled for July 18, 1989. Montgomery argued that the government "caused the loss of the confidential informant." The court, however, found that under the "totality of the circumstances," the government did not cause the unavailability of the confidential informant. The court also found the government used "due diligence" in trying to locate the confidential informant. Following the court's May 22, 1989, hearing, Montgomery renewed his motion to dismiss, and the court again denied his motion.

On July 26, 1989, Montgomery was found guilty on all counts. Once again, Montgomery renewed his motion to dismiss the indictment due to the government's failure to produce the confidential informant and for outrageous governmental misconduct. The court denied Montgomery's post-trial motion to dismiss for failure to preserve the confidential informant, but agreed to rehear Montgomery's motion to dismiss due to outrageous government misconduct on August 3, 1989.

At the hearing on August 3, 1989, Montgomery testified that he had received a telephone call from Hardcastle. Hardcastle informed Montgomery that a DEA agent had threatened Hardcastle, causing Hardcastle to disappear. Despite Montgomery's testimony, the court denied Montgomery's motion to dismiss due to governmental misconduct and failure to produce the confidential informant. The court again concluded that the government did not "cause the unavailability of the confidential informant" and that the government used reasonable diligence in trying to locate Hardcastle.

On September 27, 1989, Montgomery was sentenced to five years in prison and five years supervised release. Montgomery filed a timely appeal.

On August 6, 1990, two days before oral argument of the appeal, Montgomery's counsel fortuitously learned that the confidential informant had been arrested, and counsel moved to supplement the appellate record with the transcript of Hardcastle's sentencing hearing, which contained statements by Hardcastle regarding a DEA agent's alleged threats. After reviewing the transcript, we deferred submission of the case pending a hearing in the district court on Montgomery's motion to dismiss the indictment.

On August 23, 1990, Montgomery filed a motion to vacate his conviction pursuant to 28 U.S.C. § 2255. An initial hearing was held on December 18, 1990, at which time DEA Agent Courtney denied that threats had been made against Hardcastle. Agent Courtney admitted, however, to conversations with Hardcastle about his prosecutorial status but testified that these merely consisted of advice to Hardcastle that, under the applicable law, if Hardcastle did not plead guilty to a deal involving a two year jail term, his case would be sent back to Tennessee where he would receive a higher sentence. After hearing testimony from the DEA agent and Hardcastle, the district court denied Montgomery's motion, finding that Agent Courtney's remarks on April 14, 1989, did not amount to threats.

Montgomery filed a timely notice of appeal. The appeal of the district court's denial of habeas relief has been consolidated with Montgomery's direct appeal.

## II.

### A.

 The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. *United States v. Popoola*, 881 F.2d 811, 812 (9th Cir.1989). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies to our review of the district court's denial of the habeas motion, as well as of the pre- and post-trial motions." *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989). Because the question of "reasonable efforts" is one of fact, the clearly erroneous standard applies. *United States v. Tornabene*, 687 F.2d 312, 316 (9th Cir.1982). Montgomery's contention that reasonable efforts should be reviewed de novo has no merit, as we previously considered the issue and rejected it in an en banc proceeding in *United States v. Hart*, 546 F.2d 798, 801–02 (9th Cir.1976) (en banc), *cert. denied*, 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977). In our view, *United States v. McConney*, 728 F.2d 1195 (9th Cir. 1984) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1985), does not alter this conclusion, just as it has not altered the cases *Hart* relied upon in reaching it. *See* 546 F.2d at 801 (citing *United States v. Page*, 302 F.2d 81 (1962) (en banc)); *United States v. Kelley*, 953 F.2d 562, 566 (9th Cir. 1992).

### B.

To be sure, there may be reasons why under certain circumstances the government must use confidential informants in its law enforcement activities and why the government must keep the identities of those informants confidential. None of these reasons, such as risk of reprisal, appears in the present case. Moreover, a law enforcement system which regularly employs drug addicts and known drug dealers to solicit others to deal drugs in exchange for money, sentence reductions or other consideration which only the government can provide poses clear dangers. In *Velarde–Villarreal v. United States*, 354 F.2d 9, 13 (9th Cir.1965), we recognized these dangers and warned,

[t]he practice of the Government in employing agent-informers in narcotics cases is well known. We also know that such agents are usually not trained officers— often they are themselves addicts or former addicts. The Government must know that an eager informer is exposed to temptations to produce as many accuseds as possible at the risk of trapping not merely an unwary criminal but sometimes an unwary innocent as well.

*See also United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir.1993) ("[t]he use of informants * * * is fraught with peril").

As a matter of fairness, courts have often required the government to show reasonable efforts in producing the confidential informant at trial or for an interview when properly requested by a defendant, such as when the defendant asserts a plausible entrapment defense, or otherwise shows a need for the information.

*Velarde–Villarreal* sets forth the general rule concerning reasonable efforts required of the government to produce a confidential informant for trial:

> If it were made to appear that the Government, through reasonable effort, could have produced [the confidential informant] and yet failed to do so when defendant demanded such production, there should be a new trial. On the other hand, if the Government was actually unable by reasonable effort to produce him, * * * such inability would [not] require a dismissal of the case, unless of course the Government itself purposely saw to it that [the confidential informant] disappeared * * *.

354 F.2d at 12.

Courts typically find the government's efforts to secure the presence of a confidential informant unreasonable when the government acts with negligence or intentional avoidance. *E.g., United States v. Tornabene,* 687 F.2d at 316 ("Whether through neglect or intentional avoidance, the government's actions, taken as a whole, do not reflect efforts which were designed to produce the informant."). Courts have also generally held that the government bears the burden of proving the reasonableness of its efforts once it is shown that the government was under a duty to produce. *See Velarde–Villarreal,* 354 F.2d at 13; *United States v. Suarez,* 939 F.2d 929, 932 (11th Cir.1991); *United States v. Pizarro,* 717 F.2d 336, 343 (7th Cir.1983); *United States v. McDonald,* 935 F.2d 1212, 1217–18 (11th Cir.1991); *United States v. Padilla,* 869 F.2d 372, 377 (8th Cir.), *cert. denied,* 492 U.S. 909, 109 S.Ct. 3223, 106 L.Ed.2d 572 (1989); *United States v. Giry,* 818 F.2d 120, 130–31 (1st Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987).

### C.

Because the government has not challenged the district court's order requiring production of the informant, we may assume that it was properly ordered. As such, reasonable efforts were required of the government. Applying the definition of reasonableness outlined in section B above to the present case, we conclude that the district court clearly erred in finding the government's efforts to produce Hardcastle reasonable. The district court erred in several procedural respects: (1) it imposed the burden of proof on Montgomery, rather than on the government; (2) it impermissibly relied on hindsight to evaluate whether the government's actions were reasonable; and (3) it identified the wrong timeframe upon which to focus the inquiry. Finally, the district court clearly erred in a substantive way by (4) finding the government's efforts reasonable, given the government's complete inaction during the relevant time period in the face of Hardcastle's inaccessibility and his growing recalcitrance.

### 1.

The government bears the burden of showing that it used reasonable efforts; it is not the defendant's burden to show a failure of due diligence. *United States v. Suarez,* 939 F.2d at 932 (government bears the burden of demonstrating that it did not cause an informant's disappearance and that it made a reasonable effort to locate the informant); *United States v. Pizarro,* 717 F.2d at 343 (same); *Velarde–Villarreal,* 354 F.2d at 13 (same). Yet, when the district court denied the pretrial motion, it stated that the evidence did not make out a failure to use due diligence.

This error was compounded when, during the hearing on Montgomery's section 2255 motion, the court again stated that the defense had the burden of showing the government caused the informant to flee. While it is generally true that a defendant bears the burden in a habeas motion, the court was not deciding the isolated issue whether the gov-

ernment caused the informant to disappear. The district court was to combine the new evidence produced at the section 2255 hearing with the evidence presented at the pretrial and post-trial hearings to determine the reasonableness of the government's efforts in light of all the evidence. Thus, the district court erred in placing the burden upon Montgomery rather than the government.

### 2.

■ In addition, the court erred in employing hindsight to judge the reasonableness of the government's efforts. As stated in *Hart*, 546 F.2d at 801, a district court may not resort to hindsight to judge the reasonableness of the government's efforts. In the case at bar, the district court determined that because the informant's own bail status did not secure his presence, *a fortiori* a subpoena would not have done so; therefore, the government's failure to subpoena Hardcastle was reasonable. *Montgomery v. United States*, Civ. No. 90–1177–K at 12 (S.D.Cal. Feb. 8, 1991) (hereinafter "Order"). The district court further determined that because the informant fled within a mere hour and a half of his conversation with DEA Agent Courtney on April 14, no efforts thereafter would have produced him. Therefore, even if the conversation had given notice that Hardcastle's flight was possible, the district court reasoned that the failure to make any effort to secure his presence thereafter was reasonable. We find that the court's reliance on "the view from perfect hindsight," 546 F.2d at 801, constitutes legal error.

### 3.

■ The district court also improperly focused on the timeframe from January 5, 1989, through April 14, 1989. The relevant period from which to judge the reasonableness of the government's efforts is:

the time the government is exerting its efforts to obtain the attendance of the witness * * *. That would ordinarily be after the trial date had been established

and as the case was progressing to the actual finalized trial date.

*United States v. Hart*, 546 F.2d at 801. The period the district court should have considered is from March 27 through April 10, during which the government was under court order to produce the informant no later than ten working days before the as-yet unspecified trial date, and from April 10 through April 18, during which it was under court order to produce the informant no later than April 18. Thus, we consider the government's actions during the period from March 27 through April 18.

During the first 21 days of this 23-day period,[1] the government did absolutely nothing to (1) locate the informant, (2) ensure that it would be able to locate the informant when necessary, or (3) notify the informant that he must be available for an interview by April 18. The "almost daily contact" between Agent Bohn and the informant that occurred from November 16 through January 5, while the informant was setting up the drug deal, ceased almost immediately following Montgomery's arrest on January 5. It dwindled to one contact on January 27 and a telephone conversation at the end of February.

Moreover, Agent Bohn, the only agent working with the informant, was out of town during the first two weeks of February and all of March and April, apparently having been transferred to the East Coast. During this time, Agent Courtney did not know how to contact the informant. Agent Bohn (and his replacement, "Steve") relied on the informant to call him. Such contacts were random and infrequent (five calls over a ten-week period). Agent Bohn knew that the informant had sold his home and was living in transient quarters, but Agent Bohn did not provide for any means of ensuring regular contact with the informant or tracing him.

### 4.

■ Finally, the district court clearly erred in a substantive way by finding the government's efforts reasonable. It is undis-

---

1. On the 22nd day, the government began its search efforts—not because it sought to comply with the court's order, but because the informant

had failed to appear for his own plea proceeding. Thereafter, the government's efforts were reasonable.

puted that the government did not inform, nor attempt to inform, Hardcastle ·that the district court had ordered him to appear for· a pretrial interview. It is also undisputed · that the government had at least one opportunity to notify Hardcastle of the district court's order when DEA Agent Courtney spoke on the phone with the confidential informant on April 14, 1989, before Hardcastle became a fugitive. Instead of relaying the court's order, the government lessened the likelihood of obtaining the informant's appearance by advising him that, unless he pleaded guilty to charges pending in California, he would face prosecution in Tennessee and harsher penalties.

At no time did the government schedule an interview with Hardcastle, nor did it make any effort to do so. Indeed, the government failed to obtain a phone number or permanent address from the informant during his period of release, even after it aided Hardcastle in obtaining release of the security he had posted to make bail. During this period of inaction, the assistant United States attorney handling Montgomery's case, Randy Jones, had no contacts with the informant. On April 12, he told another assistant United States attorney handling the informant's case, Carol Lam, that he would need the informant's testimony at trial. AUSA Jones never told AUSA Lam or DEA Agents Courtney or Bohn that the court had ordered him to produce the informant by April 18. Nor did AUSA Lam tell AUSA Jones, only two days later, that plea discussions with the informant had broken off, and she was transferring the informant's case back to Tennessee.

From these facts, it is difficult to escape the conclusion that the government intentionally avoided Hardcastle's availability for production. In fact, the government so completely avoided knowledge of the confidential informant's activities and whereabouts that it was not even aware that Hardcastle had fled until he failed to appear for his Rule 20 guilty plea hearing, one day before the last day allowed by the production order. Still, the government did nothing to draw Hardcastle's disappearance to the attention of the defendant or the court. Nor did the government seek an extension of time to comply with the order. Only when Montgomery grew concerned enough to ask for a conference with ·the court about the government's failure to produce Hardcastle did the government admit his disappearance. Even viewing the government's conduct in the most charitable· light possible, we have no choice but to characterize the government's actions as negligent. When a valid production order issues, it is inexcusable· for the government to do nothing until the informant disappears. Such inaction clearly constitutes unreasonable efforts under these circumstances, and the district court erred in finding otherwise.

The government contends that it had no reason to suspect Hardcastle would not continue to cooperate and not make all his court appearances. We reject the position that in no case need the government take action to secure an informant's appearance until it has reason to believe the informant will become unavailable. Some measures, such as determining how the informant can be contacted, should undoubtedly ·be· expected as a matter of prudence regardless· of a particular informant's reliability.[2]

In any event, the government had little or no basis to support an expectation that Hardcastle would cooperate with the production order. A district court must consider the reasonableness of the government's efforts "taking into consideration the background of performance and attitude of the desired witness." *Hart*, 546 F.2d at 801.

In the present case, the government did not have the informant's own assurances of cooperation since it had never informed him of the production order or trial. It knew that Hardcastle's cooperation was not entire-

---

2. We further reject the government's contention that it had no obligation under the district court's production order until the court set a trial date. The setting of a trial date merely imposed a deadline on the government's obligation; it was not necessary to create that obligation. Under the terms of the court order, the government's duty to produce was ·immediate. · Moreover, the government had more than two weeks between the setting of the trial date and the informant's' disappearance within .which to notify the· informant of the need to appear or otherwise make the informant available to Montgomery.

ly voluntary, but was instead given in hope of a reduced sentence on his own offense. There were no prior instances of assistance with investigations or trials. The government knew that on April 10, the informant had obtained a continuance of a scheduled court appearance. It also knew that the informant wanted a continuance of the April 17 appearance. In other words, the government knew Hardcastle was dragging his feet. There was also some suggestion, which the district court disallowed as irrelevant, that the informant had failed to appear in two previous cases, and that the government may have been aware of these failures. Given this lack of demonstrated cooperation with court proceedings and the evidence of reluctance to cooperate, the district court's finding of "prior reliability," Order at 11, is highly questionable.

As for the informant's attitude, AUSA Lam told the informant's counsel that Hardcastle would not receive probation on April 7. The government was aware that the informant had had a tough time in jail and was extremely anxious to receive probation. On April 14, the informant told Agent Courtney, "you've [sic] got to have probation. I can't go to jail * * *. I gotta have probation." The government knew that the informant did not want to make his scheduled court appearance on April 17. Agent Courtney told him, "If you do not want to enter a plea, then I will have your case transferred back to Memphis, and you can deal with it in Memphis." He told the informant that in Tennessee "[he] felt they [the informant and his girlfriend] would face more severe punishment." Although not a threat, the statement indicates that the government knew the informant was recalcitrant and that their relationship was deteriorating. On April 14, AUSA Lam told the informant's attorney that his case "would have to be returned to Tennessee, but that [she] would allow them to self-surrender in Tennessee." The issue is not, as the district court indicated, whether "definite promises" of probation were made to Hardcastle, Order at 8–9; nor whether the government's statements about sending him back to Tennessee were "legally accurate," Order at 10. The issue is what the government knew about the informant's attitude

and past performance, and whether in light of that knowledge its actions "reflect efforts which were designed to produce the informant" for the defense. *Tornabene*, 687 F.2d at 316. This statement comes close to authorizing—even directing—the informant to leave California and return to Tennessee. The government's failure to take the slightest step to ensure the informant's later appearance or "locatability" was unreasonable in light of its knowledge of Hardcastle's attitude.

### D.

In reaching this conclusion, we are not imposing new burdens on the government. The rule that the government must show that it used reasonable efforts to produce a confidential informant who is unavailable to a defendant was established more than twenty-five years ago in *Velarde–Villarreal v. United States*. *See* 354 F.2d at 13. Since then, it has been reaffirmed many times, by this court en banc as well as by other circuits. *See Hart*, 546 F.2d at 799; *United States v. Suarez*, 939 F.2d at 932; *United States v. Padilla*, 869 F.2d at 377; *United States v. Giry*, 818 F.2d at 130; *United States v. Pizarro*, 717 F.2d at 343; *United States v. Muse*, 708 F.2d 513 (10th Cir.1983); *United States v. Gonzalez*, 582 F.2d 991, 992 (5th Cir.1978) (per curiam).

We most recently reaffirmed the government's obligation to use reasonable efforts to produce an informant whose presence has been properly requested by a defendant in *United States v. Tornabene*. In that case, we held that "haphazard attempts" by the DEA to secure the presence of a confidential informant did not constitute reasonable efforts, and ordered a new trial. 687 F.2d at 316. The district court in *Tornabene* ordered the production of a confidential informant within a two-week period for a pretrial interview. The agents informed the confidential informant that he had to make himself available for an interview with the defense counsel. 687 F.2d at 314. Approximately two or three weeks after the court ordered the production of the confidential informant, the informant told agents he would be moving soon. Neither of the

agents asked the confidential informant for his new address. The agents testified that they tried repeatedly to call the informant but could not reach him due to the fact that his telephone had been disconnected. Based upon this evidence, the trial court held that the agents had used reasonable efforts and denied the motion to dismiss. 687 F.2d at 315.

The next day, which was the day before trial, defense counsel called the government's attorney and obtained the home phone number of the informant. When the defense attorney called the number, he received a recording giving the informant's new number. The defense attorney dialed the new number, talked to the informant, and discovered that the informant's testimony would contradict much of the agent's testimony. Upon review, we reversed the district court's holding that the government used reasonable efforts.

Compared to the government's attempt to secure the confidential informant in *Tornabene*, the government's inaction in the present case stands in marked contrast. Notably, the agents in *Tornabene* actually notified the confidential informant that he had to make himself available for an interview with defense counsel, whereas Hardcastle was never so informed. Given that we found in *Tornabene* that the government's efforts to secure the confidential informant were "haphazard" and "unreasonable," a finding in the present case that the government acted reasonably would be wholly untenable.

Cases in which the courts have found the government's efforts reasonable are factually distinguishable from the present case. In such cases, the government started its attempt to locate the informant a reasonable period in advance of the required production date, as in *United States v. Suarez*, 939 F.2d 929. In *Suarez*, after the court ordered the government to produce the informant at trial, the government began its search two weeks in advance, sought a continuance when it could not locate him, and continued to search for several weeks more. *Id.* at 931. Or the government notified the informant of his obligation to appear and testify, as in *United States v. Hart*, 546 F.2d at 799–800, and

*United States v. Muse*, 708 F.2d 513. In both cases, the court ordered informants produced at trial. In *Hart*, the government talked to the informants twelve times during the month preceding trial, telling them they must be present for trial "in very strong terms." 546 F.2d at 799–800. In *Muse*, the government told the informant five days before trial that he would have to appear at trial. The informant assured the agents he would be present, checked in repeatedly by telephone, and left forwarding numbers where he could be reached. 708 F.2d at 514. Generally, the government also had direct, daily supervision of an informant who was aware of his obligation to testify, as in *United States v. Pizarro*. *See* 717 F.2d at 344. Or the informant had a long-established working relationship with the government during which the informant had previously appeared and testified as required. *E.g., Hart*, 546 F.2d at 800; *United States v. Cervantes*, 542 F.2d 773, 775–76 (9th Cir. 1976) (informant worked for government for two years, had been reliable in past and had testified on two previous occasions).

From these cases, it appears that the extent of the government's efforts to secure the confidential informant's presence weighs against the extent of the government's control over the informant and the informant's affirmative demonstrations of cooperation and reliability; deficiencies in one aspect may be countered by strength in others. The present case, however, shows a complete absence of effort, a complete absence of control, and a near complete absence of demonstrated cooperation (*e.g.*, either verbal assurances or prior track record of trial assistance). Thus, the government's own evidence wholly fails to demonstrate that its efforts to produce the informant were reasonable under the circumstances.

### E.

The Supreme Court held that in "cases concerning the loss of material evidence, sanctions will be warranted * * * only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 873–74, 102 S.Ct.

3440, 3450, 73 L.Ed.2d 1193 (1982). The government argues that Montgomery has failed to show that the confidential informant's testimony would have been both material and favorable to his defense as required by *Valenzuela–Bernal,* 458 U.S. at 873, 102 S.Ct. at 3449. Accordingly, the government urges us to affirm the district court's holding.

As the Court recognized in *Valenzuela–Bernal,* it is not possible to make any showing of *how* a witness will testify when the witness disappears before a defendant has had an opportunity to interview him. 458 U.S. at 871, 102 S.Ct. at 3448. Montgomery need not show the exact contents of Hardcastle's testimony before reversal is proper. This rule follows from *Roviaro v. United States,* 353 U.S. 53, 64, 77 S.Ct. 623, 629, 1 L.Ed.2d 639 (1957), where the Supreme Court, in deciding whether to vitiate the government's privilege of not disclosing an informant's identity, considered matters to which the informant *might* testify.

We find Hardcastle's testimony material and favorable to Montgomery's case. In particular, Hardcastle's testimony was crucial to Montgomery's entrapment defense. Hardcastle was at the center of the alleged conspiracy and instrumental to the drug transactions. Hardcastle provided all the information which the DEA possessed concerning Montgomery and the alleged conspiracy. In addition, Hardcastle was in contact with Montgomery pursuant to DEA instructions, with the intent of soliciting a sale of drugs. He is a percipient witness to the offenses charged against Montgomery. Moreover, there was testimony indicating that Hardcastle fabricated or exaggerated some statements to the DEA agents relating to Montgomery's predisposition. Hardcastle's corroborating testimony or impeachment could significantly aid Montgomery's entrapment defense. Finally, Montgomery contends that Hardcastle's testimony would establish a defense of outrageous government misconduct in its use of Hardcastle as an informant by revealing that the government threatened Hardcastle and pressured him to entrap Montgomery. Hardcastle's testimony at his sentencing hearing and at the hearing on Montgomery's section 2255 motion lends support to Montgomery's claim. Thus, we find Montgomery has made a plausible showing that Hardcastle's testimony is both material and favorable to Montgomery's case and could well have affected the trier of fact.

When the government fails to use reasonable efforts to produce a confidential informant and thereby prejudices a defendant's case, the appropriate remedy upon appeal is to remand for a new trial. *Tornabene,* 687 F.2d at 316 (rejecting dismissal of indictment for government's failure to produce confidential informant, stating: "We feel that the proper remedy for the [government's] failure in this case is a new trial.") (citing *Velarde–Villarreal v. United States,* 354 F.2d at 13). Dismissal is an inappropriate remedy unless the government purposefully saw to it that the confidential informant "disappeared." *Cf. United States v. Cervantes,* 542 F.2d at 775–76; *Velarde–Villarreal v. United States,* 354 F.2d at 13. In this case, while the evidence is overwhelming that the government was at least negligent in failing to employ reasonable efforts, the evidence is insufficient to establish that the government purposefully caused Hardcastle's disappearance. Thus, the proper remedy is a new trial. As Hardcastle now appears available as a witness, having been captured and sent to prison, this remedy will serve its purpose and not merely amount to a rerun of the first trial where the informant was absent.

### III.

### A.

The district court's determination of the bounds of relevant cross-examination is reviewed for an abuse of discretion. *United States v. Panza,* 612 F.2d 432, 437 (9th Cir.1979), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118; 447 U.S. 926, 100 S.Ct. 3020, 65 L.Ed.2d 1118 (1980). The district court's decision to strike the testimony of a witness who refuses to answer questions on cross-examination is also reviewed for an abuse of discretion. *Id.* at 438; *Magyar v. United Fire Ins. Co.,* 811 F.2d 1330,

1331 (9th Cir.), *cert. denied,* 484 U.S. 851, 108 S.Ct. 151, 98 L.Ed.2d 107 (1987).

### B.

 On August 3, 1989, Montgomery testified at an evidentiary hearing regarding his motion to dismiss for outrageous government misconduct. On cross-examination he refused to answer questions concerning his source of supply for fear of reprisal. He informed the court that he had been beaten in the Metropolitan Correction Center while his case was pending trial because rumors spread that he was an informant and his girlfriend Linda Elkins had received a threatening phone call. Nevertheless, the district court required Montgomery to answer questions concerning his source. The district court reasoned that such questions went to the essence of Montgomery's entrapment theory and that the government should be able to challenge his testimony regarding lack of predisposition by asking such questions. When Montgomery refused to answer, the district court ordered Montgomery's entire testimony stricken from the record. We find the district court did not abuse its discretion in refusing to limit the scope of cross-examination to questions not concerning the identity of Montgomery's source, and did not abuse its discretion in ordering Montgomery's entire testimony stricken when he refused to answer such questions.

"The [district court's] power to control the conduct of trial is broad." *Panza,* 612 F.2d at 438. To ensure truth through cross-examination, the district court "must necessarily have the discretion to order a witness to answer a question; and, if the order is disobeyed, to invoke appropriate sanctions." *Magyar,* 811 F.2d at 1331. Determination of the appropriate sanctions is left to the district court in an exercise of reasoned discretion. *Panza,* 612 F.2d at 439. Striking the testimony of a witness is one such appropriate sanction. *Id.* However, where the defendant's refusal to testify touches only collateral matters, striking his or her testimony may be an abuse of discretion. *Id.* at 439; *Magyar,* 811 F.2d at 1331; *see also United States v. Lord,* 711 F.2d 887, 892 (9th Cir. 1983). The court in *United States v. Lord* defined a collateral matter as a matter not reasonably related to or directly affecting a witness's testimony. *Id.* at 892; *see also United States v. Stenberg,* 803 F.2d 422, 434 (9th Cir.1986).

Montgomery contends that the identification of his suppliers is a collateral matter, and therefore striking his entire testimony was an inappropriate sanction. In support of his contention, Montgomery cites *United States v. Lord.*[3] In *United States v. Lord,* a witness testified about a confidential informant's credibility and pattern of behavior in seeking cocaine. When asked to identify suppliers, she refused to answer based on her Fifth Amendment privilege against self-incrimination. The court held that the identity of suppliers was a collateral matter, and therefore the district court erred in striking all the witness's testimony. 711 F.2d at 892.

The present case differs from *United States v. Lord* in that it involves a defendant testifying on his own behalf in an entrapment case and not a defense witness asserting her Fifth Amendment privilege. "When entrapment is raised as a defense, the defendant is exposed to a searching inquiry into his own conduct and predisposition." *Stenberg,* 803 F.2d at 434 (quotations omitted).

The district court specifically determined that the identification of Montgomery's source was directly relevant to an entrapment theory and not collateral.

> THE COURT: ... [L]istening to him, he's basically saying entrapment without predisposition. I mean * * * he's putting forth an entrapment. "I didn't want to do it. I divorced my wife. I started a new life. I got away from my in-laws," and this

---

3. In his reply brief, Montgomery also cites *Clark v. Ricketts,* 958 F.2d 851 (9th Cir.1991), *cert. denied,* — U.S. —, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992), as standing for the proposition that questions concerning identity are not proper on cross-examination. In *Clark,* the government provided the name and felony record for an unidentified witness. Consequently, the court concluded that the defense had every opportunity to discover material to impeach the witness' credibility. Montgomery, on the other hand, never revealed the identities of any of his sources.

whole thing, I didn't want to. And I was preyed upon by this guy who knew my financial situation. I kept turning him down, but I was in a bad financial situation, and he pressured and pressured, and finally I gave in. [T]hat's the bottom line * * *. [I]t is relevant, therefore, just as it would be on a pure entrapment, to go into these relationships * * *. [W]here was your source? How often have you seen your source? How often have you bought from him? Are you using yourself? Were you using during this particular time? It all has a bearing on this theory of entrapment, outrageous Governmental conduct that he's put on, and his credibility.

MS. HALL: Your Honor, he's more than willing to testify if the questions are framed in the terms of source and contact.

THE COURT: I understand that, but here's the situation. The Government then can't really impeach him on that. They can't impeach him without him knowing. And the impeachment evidence that they might be introducing, they may be able to do none. It may be just information that they have in their files. It may be that they've actually got observations and sightings, or information from other people that would discount him, or it may be that they have none and they just would attack him on what he says, but nevertheless, there is a possibility that they could be able to even introduce extrinsic evidence.

The district court determined that the government could not effectively impeach Montgomery's testimony without the actual identities of the suppliers. Since the identity of Montgomery's suppliers is reasonably related to his entrapment defense, it is not a collateral matter. Consequently, the district court did not abuse its discretion in striking Montgomery's testimony when he refused to answer questions about his source.

Accordingly, we affirm the district court's refusal to limit the scope of cross-examination to questions not concerning the identity of Montgomery's source and the district court's decision to strike Montgomery's testimony from the record upon his refusal to answer. We find, however, that the government's failure to use reasonable efforts to produce Hardcastle, a material and exculpatory witness, compels reversal. Therefore, we reverse his conviction and remand for a new trial.

**REVERSED and REMANDED.**